IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EUGENE E. FORTE,

     Plaintiff,

  v.

HYATT SUMMERFIELD SUITES,
PLEASANTON, et al.,

     Defendants.

_____/

No. C 11-2568 CW

ORDER GRANTING
DEFENDANTS'
MOTIONS FOR
SUMMARY JUDGMENT
(Docket Nos. 54 &
96)

    Plaintiff Eugene Forte, proceeding <u>pro se</u>, brings this action against Defendants, Hyatt Summerfield Suites of Pleasanton, Ana Villa, the Pleasanton Police Department (PPD), Officer Jerry Nicely, Officer Mardene Lashley, and Officer Martens for wrongful eviction, false imprisonment, negligent infliction of emotional distress, assault, battery, and various civil rights violations under 42 U.S.C. §§ 1983, 1985, 1986, and 1988. Defendants now move for summary judgment. In addition, Defendants Villa and Hyatt (Hotel Defendants) move for judgment on the pleadings and Plaintiff has requested leave to amend his complaint. Having considered oral argument and the papers filed by the parties, the Court grants Defendants' motions for summary judgment and denies as moot Hotel Defendants' motion for judgment on the pleadings.

BACKGROUND

    The following facts are undisputed, unless otherwise noted. On March 6, 2010, Plaintiff, his wife, and his four children checked into the Hyatt Summerfield Suites in Pleasanton, California, early in the morning. Declaration of Steven L.

United States District Court
For the Northern District of California

Roycraft, Ex. 4, PPD Audio Recording, at 5:30-:35.  After spending a few hours in the room, Plaintiff returned to the lobby of the hotel at around 10:00 a.m. to ask where he could find breakfast for himself and his family.  Declaration of Monique Paniagua ¶ 2. The clerk at the front desk assisted him and then watched as Plaintiff began to distribute copies of a newspaper called <u>Badger Flats Gazette</u>, which Plaintiff self-publishes, to other hotel guests in the lobby.[1]  <u>Id.</u> ¶ 3.  According to the clerk, Plaintiff also spoke with several hotel guests about the newspaper and told them that his life was in jeopardy.  Paniagua Decl. ¶ 3. Plaintiff states that he "never spoke to multiple guests."  Eugene Forte Decl. ¶ 7.

After Plaintiff left the lobby, the front desk clerk telephoned the hotel's manager, Veronica Villa,[2] to report that several guests had complained about Plaintiff's behavior. Paniagua Decl. ¶ 4; Declaration of Veronica Villa ¶¶ 3-4. Plaintiff does not, and cannot, provide evidence that no guests complained or that the clerk did not report to Villa that they did.  Villa then called Plaintiff's room to discuss what had happened in the lobby.  Villa Decl. ¶ 5.  Before she could ask

---

[1] The newspaper is essentially a collection of re-printed letters between Plaintiff and the police department in Los Banos, California, where Plaintiff and his family reside.  Paniagua Decl., Ex. A, <u>Badger Flats Gazette</u>.  The letters pertain to a series of comments that were apparently left on Plaintiff's YouTube page in February 2010 by a local high school student who threatened to assault Plaintiff for using racially insensitive language at a Los Banos city council meeting.  <u>Id.</u>; Declaration of Eugene Forte ¶ 15.  Plaintiff offers additional information regarding this incident in his declaration but, because that information does not pertain to his claims in this lawsuit, it is omitted from this background.  <u>See</u> Eugene Forte Decl. ¶¶ 12, 14-15.

[2] Villa, who is named in the complaint as "Ana Villa," asserts that her true name is Veronica Villa.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

Plaintiff to provide his version of events, however, Plaintiff began telling Villa that his life was in danger and she needed to call the Los Banos police. Id. ¶¶ 5-8. He then began to shout and told Villa that if he was killed, it would be her fault. Id. ¶ 8. Villa claims that she then told Plaintiff that she was going to call the Pleasanton police to have him removed from the hotel, id. ¶ 7; Plaintiff disputes only that she notified him of her plan to call the police, Eugene Forte Decl. ¶ 10. In any event, Villa called the police after she finished speaking with Plaintiff. Villa Decl. ¶ 9.

Soon afterward, at approximately 11:00 a.m., PPD Officers Nicely and Lashley arrived at the hotel. Id. ¶ 11; Declaration of Mardene Lashley ¶ 5; Declaration of Jerry Nicely ¶ 5. Villa told the officers about Plaintiff's erratic behavior in the lobby and on the phone and expressed her concerns about him staying at the hotel. Villa Decl. ¶ 11; Lashley Decl. ¶¶ 6-7; Nicely Decl. ¶¶ 6-7. The officers agreed to stand by as she attempted to remove Plaintiff and his family from the hotel. Villa Decl. ¶ 11; Lashley Decl. ¶¶ 6-7; Nicely Decl. ¶¶ 6-7. When the three of them arrived at Plaintiff's hotel room, however, Plaintiff refused to come outside to speak with them. Villa Decl. ¶¶ 12-13; Lashley Decl. ¶ 9; Nicely Decl. ¶ 9. Instead, he began yelling at them through the door and window of the hotel room and telling them to contact the Los Banos police department. Roycraft Decl., Ex. 4, at 3:20-7:15. He told the officers that they were in trouble, id. at 6:20-:30, bolted the door to the room, id. at 9:55-10:15, and refused to let them enter, id. He alleges that the officers attempted to break down the door. Eugene Forte Decl. ¶¶ 6, 19.

**United States District Court**
For the Northern District of California

Over the next ninety minutes, Officers Nicely and Lashley -- as well as several other PPD officers who later joined them at the hotel -- spoke with Plaintiff through the hotel room door in an effort to get him to leave. Lashley Decl. ¶ 10; Nicely Decl. ¶¶ 10, 16. During this period, the officers used a police-issued digital audio recorder to document their conversation with Plaintiff. Lashley Decl. ¶ 8. Plaintiff refused all requests to exit the room during this period and, at several points, screamed at the officers asking him to come outside. Lashley Decl. ¶¶ 11-13; Nicely Decl. ¶ 14; Roycraft Decl., Ex. 4, at 16:25-17:15, 18:15-:40, 19:02-:14, 20:10-:15. He refused to respond to specific directives from Officers Nicely and Lashley, their superior, PPD Sgt. Mickleburgh, and his superior, Lt. Bretzning. Lashley Decl. ¶¶ 13-15; Nicely Decl. ¶ 15. Plaintiff also refused PPD's offers for medical support despite telling the officers that he had been injured and that his daughter might need medical attention. Eugene Forte Decl., Ex. 3, Pl.'s Transcript of PPD Recording, at 3; Roycraft Decl., Ex. 4, at 19:02; Nicely Decl. ¶¶ 11-12. Throughout the standoff, he continued to talk about the Los Banos police and the purported death threats he had received the previous month. Nicely Decl. ¶¶ 9, 17; Lashley Decl. ¶¶ 11, 14; Roycraft Decl., Ex. 4, at 3:25-:50. At one point, PPD officers called the Los Banos police and learned that a restraining order had been issued against Plaintiff for threatening statements that he had made about the town's mayor. Nicely Decl. ¶ 17; Lashley Decl. ¶ 9.

Based on this information and Plaintiff's unpredictable behavior, the PPD officers at the scene concluded that Plaintiff

posed a danger to himself and his family; they therefore decided to detain him for a mental health evaluation under section 5150 of the Welfare and Institutions Code. Nicely Decl. ¶ 22; Lashley Decl. ¶ 16. When Plaintiff finally left his room, he chastised several officers and told them again that he refused to leave the hotel. Eugene Forte Decl., Ex. 1, File 1, Pl.'s Video Recording, at 1:20-3:45. Two officers then placed him in a control hold and onto a gurney for transport to a nearby medical center. Eugene Forte Decl. ¶¶ 20-21 & Ex. 1, File 1, at 3:45-4:12; Nicely Decl. ¶ 23. A member of Plaintiff's family recorded some of this exchange, including the officers' use of the control hold, on a cell phone camera. Eugene Forte Decl., Ex. 1, File 1. Officer Nicely claims that he notified Plaintiff that he would be taken for a mental health evaluation prior to restraining him, Nicely Decl. ¶ 23; Plaintiff disputes that the police told him why he was being detained prior to placing him in the control hold, Eugene Forte Decl. ¶ 21.

On March 4, 2011, one year after the incident at the hotel, Plaintiff filed this lawsuit in Alameda Superior Court. Compl. at 1. The case was removed to federal court in May 2011. Defendants now move for summary judgment on all claims.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);

Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

DISCUSSION

I.   Defendants' Motion for Summary Judgment

A.   Wrongful Eviction (Plaintiff's First Cause of Action)

Plaintiff alleges a tort claim of wrongful eviction against all Defendants.  Compl. ¶¶ 26-29.  To survive summary judgment on this claim, he must first provide evidence to support an inference that he was "'a person in peaceable possession of real property.'" Spinks v. Equity Briarwood Apartments, 171 Cal. App. 4th 1004, 1039 (2009) (quoting Daluiso v. Boone, 71 Cal.2d 484, 486 (1969)).

Plaintiff has failed to present any such evidence. California courts have long recognized that hotel guests do not have a possessory interest in their hotel rooms.  Erwin v. City of

6

United States District Court
For the Northern District of California

San Diego, 112 Cal. App. 2d 213, 217 (1952) ("The guests in the hotel are not tenants and have no interest in the realty; they are mere licensees and the control of the rooms, halls and lobbies remains in the proprietor."). For this reason, courts typically reject wrongful eviction claims asserted by hotel guests. Republic W. Ins. Co. v. Stardust Vacation Club, 2003 WL 24215016, at *5 (E.D. Cal.) ("It was obvious from the allegations of [the plaintiff]'s initial federal complaint that she could not claim personal injury resulting from wrongful eviction because [she] was merely a hotel guest.").

Plaintiff contends that this principle should not apply here because Hyatt houses "permanent residents" in addition to its temporary guests. Courts have expressly rejected this argument in the past. As the Court of Appeal recognized in Erwin,

> It is a matter of common knowledge that hotels, in addition to guest rooms, sometimes contain apartments which include kitchen facilities and are designed and intended for occupation for persons or families for living or sleeping purposes. Under such circumstances, the entire hotel building would not necessarily be denominated an apartment house where it is designed and used primarily for the accommodation of guests.

112 Cal. App. 2d at 217. In short, a hotel does not grant all of its guests a possessory interest in their rooms merely by granting such an interest to certain, individual tenants.

Plaintiff also argues that his wrongful eviction claim should survive because Defendants repeatedly used the word "eviction" to describe their efforts to remove him from the hotel. Defendants' imprecise use of the term "eviction," however, does not endow Plaintiff with property rights that he would not have otherwise had. Because Plaintiff provides no other evidence to show that he

had a possessory interest in his hotel room, Defendants are entitled to summary judgment on his wrongful eviction claim.

B.  False Arrest and False Imprisonment (Plaintiff's Second Cause of Action)

Plaintiff alleges claims of false arrest and false imprisonment against all Defendants. Compl. ¶¶ 30-35. Because the California Supreme Court has recognized that "'[f]alse arrest' and 'false imprisonment' are not separate torts," the Court addresses these claims together. See Asgari v. City of L.A., 15 Cal.4th 744, 752 n.3 (1997) (citations omitted) ("False arrest is but one way of committing a false imprisonment.").

Defendants PPD, Nicely, Lashley, and Martens (City Defendants) contend that they are entitled to summary judgment on Plaintiff's false arrest claim because they were authorized to detain him under section 5150 of the Welfare and Institutions Code. Under that section, "[w]hen any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer . . . may, upon probable cause, take, or cause to be taken, the person into custody" for evaluation and treatment at a public facility. Cal. Welf. & Inst. § 5150. To establish probable cause under this provision, "the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant his or her belief or suspicion" that "the person detained is mentally disordered and is a danger to himself or herself." Heater v. Southwood Psychiatric Ctr., 42 Cal. App. 4th 1068, 1080 (1996). Police officers acting lawfully under

United States District Court
For the Northern District of California

section 5150 may not be held liable for false arrest or imprisonment.  Cal. Welf. & Inst. § 5278.

Here, City Defendants point to Plaintiff's ninety-minute standoff with police inside the hotel as their basis for invoking section 5150.  Specifically, they contend that Plaintiff's erratic behavior gave them probable cause to believe that he posed a danger to himself and his family.  To survive summary judgment, Plaintiff must produce evidence raising a material factual dispute concerning City Defendants' proffered justifications for detaining him.  He has not done so here.

Plaintiff's argument that City Defendants lacked probable cause for detaining him rests principally on a series of allegations that PPD officers fabricated evidence of Plaintiff's disruptive behavior.  See Opp. 14 ("It is reasonable that a jury may find that the police officers were trying to make it appear like [Plaintiff] was a danger in order to get him off the hotel property.").  For support, Plaintiff provides declarations from family members who dispute Defendants' account in broad, conclusory terms but fail to offer any specific details.  See, e.g., Declaration of Eileen Forte ¶ 9 ("There are too many conflicts and misstatements of facts between the audios, the declarations and what I heard and knew took place to list, and that contradict what [Defendants] put in their motion.").  He also submits a recent newspaper article about a police misconduct lawsuit filed against one of City Defendants arising from an unrelated incident as proof of the officer's lack of credibility. Eugene Forte Decl., Ex. 4.  Critically, however, Plaintiff does not offer any evidence contradicting the specific factual

United States District Court
For the Northern District of California

9

United States District Court
For the Northern District of California

assertions that City Defendants make to show that they reasonably believed that he posed a danger to himself and his family.  Cf. Rand v. CFI Indus., Inc., 42 F.3d 1139, 1146 (7th Cir. 1994) (stating that a plaintiff "cannot avoid summary judgment merely by asserting that [the defendants] are lying").[3]

In particular, Plaintiff does not dispute Defendants' assertion that he prevented his daughter from receiving needed medical attention by keeping the family barricaded inside the hotel room.  Plaintiff's own transcript of the PPD audio recording quotes Plaintiff stating, "My daughter may need medical attention . . . but I can't open this door, you idiot."  Id., Ex. 3, at 3; Roycraft Decl., Ex. 4, at 19:02 (capturing quote on PPD audio recording); see also Nicely Decl. ¶¶ 11-12 ("At one point, Mr. Forte stated that his daughter may need medical attention for a panic attack but then refused to permit paramedics to assess his daughter . . . .").  Minutes later, when a PPD officer asked Plaintiff whether his "kids [were] OK," Plaintiff responded, "No, they're not.  You're upsetting them.  They're stressed."  Eugene Forte Decl., Ex. 3, at 4.  Despite these inquiries and offers of medical attention, Plaintiff kept the family barricaded in the room.  Nicely Decl. ¶¶ 11-13.  Plaintiff can also be heard on the

_____

[3] Plaintiff asserts in his opposition brief that City Defendants can be heard on Officer Lashley's audio recording concocting a story to conceal their true motives in detaining him.  The recording he cites does not support this assertion and, if anything, suggests that Plaintiff fabricated certain quotes that he attributes to the PPD officers.  Cf. Scott v. Harris, 550 U.S. 372, 380-81 (2007) (stating that when one party's factual allegations are "blatantly contradicted by [a video] record[ing], so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment").

United States District Court
For the Northern District of California

PPD recording shouting at his wife when she tried to respond to one officer's offer to provide medical support to Plaintiff's children. Roycraft Decl., Ex. 4, at 21:28; see also Nicely Decl. ¶¶ 11-12 (describing how Plaintiff prevented his wife from speaking to PPD officers who sought to provide medical attention for Plaintiff's daughter). Plaintiff does not present any evidence to contradict any of these specific factual allegations.

While the exchange about Plaintiff's daughter would, on its own, justify the officers' decision to detain Plaintiff under section 5150, City Defendants provide further undisputed evidence showing that they had additional cause for concern. They note that, during the standoff, Plaintiff repeatedly told the police that he was bleeding but refused to tell them exactly how he became injured. Eugene Forte Decl., Ex. 3, at 6; Roycraft Decl., Ex. 4, at 35:15. He also volunteered unsolicited information about other past health problems, noting that he had "had a heart attack and open [sic] surgery." Roycraft Decl., Ex. 3, at 10:58. He then insisted several times that PPD officers call the Los Banos Police Department, located more than seventy-five miles away, to confirm that his life was in jeopardy. Eugene Forte Decl., Ex. 3, at 1; Roycraft Decl., Ex. 3, at 5:01, 11:20; Lashley Decl. ¶ 16; Nicely Decl. ¶ 22. And he remained hostile to both police and hotel staff throughout the entire encounter. Roycraft Decl., Ex. 3, at 8:23, 21:20, 36:25; Eugene Forte Decl., Ex. 1, File 1, at 3:32. Taken together, these facts -- none of which Plaintiff presents evidence specifically to contradict -- gave the officers reason to suspect that Plaintiff was "mentally disordered" and a "danger to himself" and others. Heater, 42 Cal.

App. 4th at 1080.  Courts have found probable cause for a section 5150 detention in similar circumstances.  See, e.g., Bias v. Moynihan, 508 F.3d 1212, 1221 (9th Cir. 2007) (finding probable cause for officers to detain an individual under section 5150 because the individual exhibited signs of paranoia, visible anger, and agitation).

Rather than produce evidence disputing City Defendants' factual account, Plaintiff argues that he never actually posed any danger to himself or others.  He submits declarations from his wife and daughter stating that they were never concerned that Plaintiff would harm them during the standoff.  See Eileen Forte Decl. ¶ 2-3; N. Forte Decl. ¶ 3.  Even if these declarations could show that Plaintiff was not actually a danger to his family, however, they would still be insufficient to defeat summary judgment here.  Courts have made clear that the relevant inquiry in assessing probable cause under section 5150 is not whether Plaintiff actually posed a danger to others but whether the officers' belief that he posed such a danger was reasonable. People v. Triplett, 144 Cal. App. 3d 283, 288 (1983) ("Each case must be decided on the facts and circumstances presented to the officer at the time of the detention." (emphasis added)).  The declarations from Plaintiff's wife and daughter are based on their contemporary assessments of Plaintiff's behavior inside the hotel room and their familiarity with his past conduct towards his family.  As such, they focus solely on information unavailable to the PPD officers at the time of the detention and, thus, fail to address the relevant question: namely, whether the officers' assessment of Plaintiff's behavior was reasonable.

United States District Court
For the Northern District of California

The only specific factual dispute that Plaintiff identifies regarding his detention is ultimately immaterial to whether or not the detention was justified.  As noted above, Plaintiff states in his sworn declaration that PPD officers did not tell him why he was being detained before they restrained him.[4]  This discrepancy, however, does not affect the probable cause inquiry.  The officers' decision to detain Plaintiff under section 5150 was based on their undisputed observations of his erratic behavior at the hotel.  That decision was justified, regardless of whether or not they waited until after Plaintiff was restrained to explain why they were detaining him.  This factual dispute is thus insufficient to defeat summary judgment.  <u>Anderson</u>, 477 U.S. at 247-48 ("[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." (emphasis in original)).

Without providing any other evidence to support an inference that his detention was unlawful, Plaintiff cannot make out a <u>prima facie</u> case of false imprisonment.  Defendants are therefore entitled to summary judgment on Plaintiff's false imprisonment claim.

Even if Plaintiff had provided sufficient evidence to support an inference that his detention was unlawful, he would have to

---

[4] <u>Compare</u> Eugene Forte Decl. ¶ 21 ("City defendants did not inform me that they were taking me for mental evaluation prior to forcing me to the ground."), <u>with</u> Nicely Decl. ¶ 23 (stating that "I informed Mr. Forte that he was going to be taken to a hospital for a mental health evaluation" before he resisted and had to be restrained).

provide additional evidence to hold Hotel Defendants liable for
false imprisonment.  The California Supreme Court has held that a
private citizen who merely calls the police for help can only be
held liable for an unlawful arrest by the police if he or she gave
them "false information" or took an "active part" in making the
arrest.  Hughes v. Oreb, 36 Cal.2d 854, 859 (1951).  More
recently, the Court of Appeal has recognized that good faith
communications with the police are privileged under section 47 of
the Civil Code and, thus, cannot form the basis for a false
imprisonment suit by someone unlawfully detained by the police.
In Hunsucker v. Sunnyvale Hilton Inn, the court specifically
recognized that a hotel "cannot be liable [for false imprisonment]
either for its communication to police or for the subsequent
conduct of the police in detaining plaintiffs."  23 Cal. App. 4th
1498, 1505 (1994).

     C.    Negligent Infliction of Emotional Distress, Assault, and
          Battery (Plaintiff's Third, Fourth, and Fifth Causes of
          Action)

    Plaintiff asserts claims of negligent infliction of emotional
distress, and assault against all Defendants.  Compl. ¶¶ 36-51.
Although Plaintiff's complaint does not provide detailed factual
allegations to support these claims, the claims appear to be based
entirely on his "eviction and detention" by City Defendants.  Id.
¶ 37.

    These claims fail for the same reason that Plaintiff's false
imprisonment claim fails: namely, City Defendants' detention of
Plaintiff was lawful under section 5150, which precludes Plaintiff
from recovering in tort against them.  Cal. Welf. & Inst.
Code § 5278.  City Defendants are thus entitled to summary

14

United States District Court
For the Northern District of California

judgment on these claims.  Hotel Defendants are similarly entitled
to summary judgment on these claims because Plaintiff has failed
to identify any tortious conduct on their part.

Defendants are entitled to summary judgment on Plaintiff's
battery claim for separate reasons.  Under California law, courts
evaluate battery claims asserted against law enforcement officers
according to the same standards used to evaluate excessive force
claims under 42 U.S.C. § 1983.  Munoz v. City of Union City, 120
Cal. App. 4th 1077, 1102 n.6 (2004) ("Federal civil rights claims
of excessive force are the federal counterpart to state battery
and wrongful death claims."); Susag v. City of Lake Forest, 94
Cal. App. 4th 1401, 1412-13 (2002); Saman v. Robbins, 173 F.3d
1150, 1156 n.6 (9th Cir. 1999).  Thus, because Plaintiff has not
provided sufficient evidence to support his excessive force claim
against City Defendants, as explained below, he cannot support a
battery claim against them either.  See, e.g., Arpin v. Santa
Clara Valley Transp. Agency, 261 F.3d 912, 922 (9th Cir. 2002)
("Under California law, [plaintiff]'s claim for battery against
the County Defendants cannot be established unless [she] proves
that [the officers] used unreasonable force against her to make a
lawful arrest or detention.").  Plaintiff's battery claim against
Hotel Defendants fails, as well, because he has not offered any
evidence that any Hyatt employee physically touched him.

D.   Federal Civil Rights Claims against City Defendants
     (Plaintiff's Sixth Cause of Action)

Plaintiff asserts various federal civil rights claims against
City Defendants under 42 U.S.C. §§ 1983, 1985, 1986, and 1988.
Id. ¶¶ 52-55.  Specifically, he alleges that his arrest and

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

detention by PPD violated his Fourteenth Amendment rights to due process and equal protection[5] as well as his Fourth Amendment protections against unreasonable searches and seizures. <u>Id.</u> The Court addresses each of these claims separately before addressing City Defendants' qualified immunity defense.

> 1. Due Process Claim

To survive summary judgment on his due process claim, Plaintiff must produce evidence to support an inference that City Defendants deprived him of some liberty or property interest without due process of law.[6] <u>Mathews v. Eldridge</u>, 424 U.S. 319, 332 (1976). Plaintiff has not made this showing here because, as explained above, he was lawfully detained under section 5150 of the Welfare and Institutions Code. Numerous courts have recognized that "[d]ue process does not require that a county provide a hearing for a person detained for seventy two hours under section 5150." <u>Barrier v. County of Marin</u>, 1997 WL 465201, at *3 (N.D. Cal.) (awarding summary judgment to defendant police officer on plaintiff's § 1983 procedural due process claim because the officer had established probable cause for the detention under section 5150) (citing <u>Doe v. Gallinot</u>, 486 F. Supp. 983, 993-94 (C.D. Cal. 1979) <u>aff'd</u>, 657 F.2d 1017 (9th Cir. 1981)). City

---

[5] Plaintiff asserts his due process and equal protection claims under the Fifth and Fourteenth Amendments. Because the Fifth Amendment only protects against due process and equal protection violations by the federal government, however, <u>see</u> <u>Bolling v. Sharpe</u>, 347 U.S. 497, 498 (1954), the Court treats these claims as arising exclusively under the Fourteenth Amendment. Plaintiff has not named any federal defendants in this suit.

[6] The Court assumes that Plaintiff's claim is based on procedural rather than substantive due process because, even though his complaint fails to distinguish between the two, his opposition brief states that he was denied "procedural due process." Opp. 25.

**United States District Court**
For the Northern District of California

Defendants are therefore entitled to summary judgment on Plaintiff's claims alleging due process violations.

### 2. Equal Protection Claim

To survive summary judgment on his equal protection claim, Plaintiff must present evidence to support an inference that PPD was motivated by a discriminatory purpose. United States v. Armstrong, 517 U.S. 456, 465 (1996). Plaintiff does not identify a specific discriminatory motive on the part of PPD in his complaint or motion papers nor does he assert that he is a member of a protected class under the Fourteenth Amendment. In his opposition brief, he argues only that "City defendants discriminated against him because he exposes government corruption," Opp. 25, which is insufficient to confer protected status. See Romer v. Evans, 517 U.S. 620, 628-29 (1996) (noting that only a limited number of groups "have so far been given the protection of heightened equal protection scrutiny under our cases").

When a plaintiff's equal protection claim is not based on membership in a protected class, he or she may only establish an equal protection violation by asserting a "class of one" claim. Cannon v. City of Petaluma, 2012 WL 1183732, at *13 (N.D. Cal.) (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). To survive summary judgment on such a claim, the plaintiff must provide evidence supporting an inference that he or she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook, 528 U.S. at 564. Here, none of Plaintiff's evidence mentions similarly situated individuals or

suggests that City Defendants would treat such individuals differently.  Indeed, as previously explained, the undisputed facts here suggest that City Defendants' decision to detain Plaintiff was based on his erratic conduct, not on a discriminatory motive.  Plaintiff has thus failed to provide evidence supporting a "class of one" equal protection claim.  City Defendants are therefore entitled to summary judgment on Plaintiff's equal protection claim.

> 3.   Fourth Amendment Claim

To survive summary judgment on his Fourth Amendment claim, Plaintiff must present evidence to support an inference that City Defendants used unreasonable force in detaining him.  Graham v. Connor, 490 U.S. 386, 395 (1989).  Under Graham, "the 'reasonableness' inquiry in an excessive force case is an objective one; the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  Id. at 397.  "[W]here it is or should be apparent to the officers that the individual involved is emotionally disturbed, that is a factor that must be considered in determining, under Graham, the reasonableness of the force employed."  Deorle v. Rutherford, 272 F.3d 1272, 1283 (9th Cir. 2001).

Here, Plaintiff presents a video recording of his arrest as evidence that City Defendants used excessive force in detaining him.  See Eugene Forte Decl., Ex. 1, File 1, at 3:50-4:12.  The video footage is shaky and does not provide a clear view of the PPD officers' efforts to restrain Plaintiff.  See id.

Furthermore, the relevant portion of the video contains background music, which Plaintiff apparently added while editing the footage, making it difficult to hear the full exchange between Plaintiff and the police. See id. Nevertheless, even setting aside these deficiencies, the footage -- along with the accompanying audio recording that Plaintiff submits -- does not amount to sufficient evidence that City Defendants used excessive force in detaining Plaintiff.

Plaintiff's video recording shows two police officers forcing Plaintiff's arms behind his back and placing him face-down on the ground. Eugene Forte Decl., Ex. 1, File 1, at 3:52-4:12. An audio recording of the same time period captures police officers restraining Plaintiff on a gurney while they prepare to transport him to a nearby hospital. Id., File 3, at 0:47-2:14. Defendants do not dispute the accuracy of Plaintiff's recordings nor do they deny that they used control holds to put him onto a gurney for transport. Rather, they contend that their use of force was reasonable under the circumstances.

After reviewing the video and audio recordings, the Court concludes that no reasonable jury could find that City Defendants used excessive force here. Plaintiff's own video and audio recordings demonstrate that he resisted the PPD officers' efforts to detain him. See Eugene Forte Decl., Ex. 1, File 3, at 1:03-1:15 (recording Plaintiff telling PPD officers to "back up" and "get your hands off me, stupid"). The footage and recordings also reveal that, prior to restraining him, the officers sought to use less intrusive means to escort Plaintiff off the hotel grounds. At several points in the video, the officers can be seen speaking

19

calmly to Plaintiff as he grows increasingly agitated and hostile towards the officers.  Id., File 1, 1:31-:50, 3:25-:50.  Thus, despite his arguments to the contrary, none of Plaintiff's video footage or audio recordings supports a reasonable inference that City Defendants used excessive force.

Because Plaintiff provides no other support for his excessive force claim -- not even his own sworn description of any such facts or any circumstantial evidence -- City Defendants are entitled to summary judgment on this claim.  Cf. Gregory, 523 F.3d at 1107-08 (upholding summary judgment for defendant police officers because plaintiff presented "no medical or circumstantial evidence" to support his excessive force claim while defendants presented evidence that they only used a control hold after plaintiff resisted other efforts to detain him).

4.   Qualified Immunity

Even if Plaintiff had provided evidence to support a material factual dispute concerning his constitutional claims, City Defendants would still be entitled to qualified immunity in this case.  The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To demonstrate that the defendant is not entitled to qualified immunity, the plaintiff must show that the constitutional violation he or she asserts was clearly established at the time of the allegedly impermissible conduct.  Pearson v. Callahan, 555 U.S. 233, 243-44 (2009); Maraziti v. First Interstate Bank, 953

United States District Court
For the Northern District of California

1    F.2d 520, 523 (9th Cir. 1992).  If the law is determined to be

2    clearly established, the next inquiry is whether a reasonable

3    official could have believed his conduct was lawful.  Act

4    Up!/Portland v. Bagley, 988 F.2d 868, 871-72 (9th Cir. 1993).

5         Here, Plaintiff has failed to show that any of the

6    constitutional violations he alleges were "clearly established" at

7    the time of his detention.  The existing case law at the time of

8    Plaintiff's detention does not establish, for instance, that the

9    use of control holds or physical restraints on an individual with

10   a suspected mental health disorder constitutes excessive force

11   when the individual poses a danger to himself or herself or

12   others.  If anything, the existing case law suggests the

13   opposite -- namely, that the use of holds and restraints in that

14   situation is generally not excessive.  See Gregory, 523 F.3d at

15   1107-08; Gibson v. County of Washoe, 290 F.3d 1175, 1198-99 (9th

16   Cir. 2002) (holding that use of physical restraints constituted

17   reasonable force when the plaintiff appeared to be a danger to

18   himself); Duarte v. Begrin, 2007 WL 705053, at *7 (N.D. Cal.) ("In

19   light of the officers' reasonable belief in the urgent need to get

20   plaintiff to a medical facility where she could be evaluated,

21   taking her by the arms into a police car in response to her

22   resistance was not so unreasonable as to defeat qualified

23   immunity, or amount to a constitutional violation.").[7]  Thus, even

24

25

26        [7] See also Bowers v. Pollard, 345 Fed. App'x 191, 197 (7th Cir.
     2009) (holding that state defendants were entitled to summary judgment
27   on mentally ill plaintiff's excessive force claim and their use of
     restraints was reasonable when plaintiff failed to provide evidence
28   disputing that he was a danger to himself or others).

**United States District Court**
For the Northern District of California

if Plaintiff could identify a triable issue of fact here, City

Defendants would still be entitled to qualified immunity.

      E.    Federal Civil Rights Claims Against All Defendants
           (Plaintiff's Seventh Cause of Action)

    Plaintiff asserts claims against all Defendants under

42 U.S.C. § 1983, alleging violations of his Fifth and Fourteenth

Amendment rights to due process and equal protection.

Compl. ¶¶ 56-57.  These claims are entirely duplicative of his

other, previously asserted constitutional claims, <u>see</u> Compl.

¶¶ 52-55, except that he asserts them against all Defendants

rather than just City Defendants.

    The Court has already explained why these claims fail against

City Defendants.  These claims also fail against Hotel Defendants,

however, because Plaintiff has failed to provide any evidence --

or even allege -- that Hotel Defendants were acting as agents of

the State when they sought assistance in removing him from the

hotel.  See <u>Lugar v. Edmonson Oil Co., Inc.</u>, 457 U.S. 922, 937

(1982) ("Our cases have accordingly insisted that the conduct

allegedly causing the deprivation of a federal right be fairly

attributable to the State.").  As Plaintiff should be aware from

his past litigation efforts, he must identify specific facts

showing coordination between public and private actors to hold a

private actor liable under § 1983.  See <u>Forte v. County of Merced</u>,

2012 WL 94322, at *25 (E.D. Cal.) ("Plaintiff has failed to allege

any facts that, if proven, would tend to show the existence of an

agreement between any of the state and non-state actors to violate

Plaintiffs' First Amendment rights.  Plaintiff has merely made the

conclusory allegation that such an agreement exists and that is

not enough to state a claim for conspiracy under § 1983." (citing

Woodrum v. Woodward County, Okla., 866 F.2d 1121, 1126 (9th Cir.

1989))).

     F.   Monell Claims Against All Defendants (Eighth Cause of Action)

Plaintiff asserts a claim against City Defendants[8] under

§ 1983 alleging that they failed to prevent PPD officers from

violating Plaintiff's civil rights.  Compl. ¶¶ 58-64.  Although

Plaintiff's complaint does not articulate a clear theory of § 1983

liability, the Court assumes that this is a claim for municipal

liability on the part of the PPD under Monell v. Department of

Social Services, 436 U.S. 658 (1978).

Under Monell, municipalities cannot be held vicariously

liable under § 1983 for the actions of their employees.  Id. at

691.  "Instead, it is when execution of a government's policy or

custom, whether made by its lawmakers or by those whose edicts or

acts may fairly be said to represent official policy, inflicts the

injury that the government as an entity is responsible under

§ 1983."  Id. at 694.  To impose liability on a government entity,

a plaintiff must show that "the municipality itself causes the

constitutional violation through 'execution of a government's

policy or custom, whether made by its lawmakers or by those whose

edicts or acts may fairly be said to represent official policy.'"

Ulrich v. City & County of S.F., 308 F.3d 968, 984 (9th Cir. 2002)

(quoting Monell, 436 U.S. at 694)).

_____

[8] Plaintiff asserts this claim against Hotel Defendants, as well, but once again fails to provide any evidence or allegations suggesting that their conduct constitutes state action.

23

United States District Court
For the Northern District of California

Here, Plaintiff has failed to identify a specific governmental policy or custom on which <u>Monell</u> liability might be premised.  The only formal policy he cites is that of the San Francisco Police Department, which he contends shows that his detention was illegal.  Eugene Forte Decl., Ex. 6.  He also argues that, because his detention was ordered by Sgt. Mickleburgh, an individual with supervisory authority, the decision qualifies as an official policy or custom.  Even if the SFPD policy or Sgt. Mickelburgh's decision constituted an official PPD policy or custom, however, neither can serve as a basis for <u>Monell</u> liability here because, as explained above, the decision to detain Plaintiff under section 5150 was lawful.  <u>Monell</u> liability can only be premised on a "constitutional violation" and Plaintiff has failed to provide evidence supporting an inference that the decision to detain him was constitutionally impermissible.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's eighth cause of action.

II.  Plaintiff's Request for Leave to Amend

In his opposition brief, Plaintiff requests leave to amend his complaint in an effort to cure various deficiencies that Defendants highlight in their motions for summary judgment.  As the Court explained at the hearing, if Plaintiff wishes to amend his complaint, he should have timely noticed and filed a motion requesting leave to do so.  Should Plaintiff decide to file such a motion at this stage in the litigation, he would face a heavy burden in justifying his request.  Courts are typically "'reluctant to allow leave to amend to a party against whom summary judgment has been entered.'"  <u>See generally</u> <u>Nguyen v.</u>

**United States District Court**
For the Northern District of California

<u>United States</u>, 792 F.2d 1500, 1503 (9th Cir. 1986) (citing C. Wright, A. Miller & M. Kane, <u>Federal Practice and Procedure</u> § 2712 (2d ed. 1983)).

Under Federal Rule of Civil Procedure 16(b), a court may not modify its schedule "except upon a showing of good cause and by leave of the district judge."  Once a court has issued a scheduling order and set a pleading deadline, the plaintiff's ability "to amend his complaint [is] governed by Rule 16(b)" not the more liberal Rule 15(a).  <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 608 (9th Cir. 1992).  Thus, a party seeking to amend a pleading after the deadline must show "good cause" for the amendment under Rule 16(b).

To determine whether good cause exists, courts examine the diligence of the party seeking the modification.  <u>Id.</u> at 609; <u>see also</u> <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1294 (9th Cir. 2000).  "[N]ot only must parties participate from the outset in creating a workable Rule 16 scheduling order but they must also diligently attempt to adhere to that schedule throughout the subsequent course of the litigation."  <u>Jackson v. Laureate, Inc.</u>, 186 F.R.D. 605, 607 (E.D. Cal. 1999).  A party moving for an amendment to a scheduling order must therefore show that it was diligent in assisting the court to create a workable schedule at the outset of litigation, that the scheduling order imposes deadlines that have become unworkable notwithstanding its diligent efforts to comply with the schedule, and that it was diligent in seeking the amendment once it became apparent that extensions were necessary.  <u>Id.</u> at 608.

The Court's scheduling order in this case set a deadline of March 12, 2012 to amend the pleadings and a trial date of March 25, 2013.  Docket No. 38, Minute Order & Case Management Order, at 1.  At such a late stage in the litigation, leave to amend is not easily granted.  See, e.g., Millenkamp v. Davisco Foods Int'l, Inc., 448 Fed. App'x 720, 721 (9th Cir. 2011) (upholding denial of leave to amend when party sought to amend six months prior to trial date); Assadourian v. Harb, 430 Fed. App'x 79, 81 (3d Cir. 2011) (upholding denial of leave to amend when plaintiff sought to amend six months after court's pleading deadline); see also Schlacter-Jones v. Gen. Tel. of Cal., 936 F.2d 435, 443 (9th Cir. 1991) ("A motion for leave to amend is not a vehicle to circumvent summary judgment."), overruled on other grounds by Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 692-93 (9th Cir. 2001) (en banc).

                              CONCLUSION

     For the reasons set forth above, the Court GRANTS Defendants' motions for summary judgment (Docket Nos. 54 & 96).  Hotel Defendants' motion for judgment on the pleadings (Docket No. 96) is DENIED as moot.  All of Defendants' evidentiary objections and objections to Plaintiff's late filings are overruled as moot.  Plaintiff's request for leave to amend is DENIED.  The clerk is directed to close the case and enter judgment pursuant to this order.  Defendants shall recover their costs from Plaintiff.

     IT IS SO ORDERED.

Dated: 12/18/2012

CLAUDIA WILKEN
United States District Judge